UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| CREDITNINJA LENDING, LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>UNITED STATES SMALL BUSINESS ADMINISTRATION; ISABELLA CASILLAS GUZMAN, in her official capacity as Administrator of the Small Business Administration; JANET YELLEN, in her official capacity as United States Secretary of Treasury; and THE UNITED STATES OF AMERICA,<br><br>                    Defendants. | Case No.: |

## <u>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

Plaintiff CreditNinja Lending, LLC (formerly known as KMD Partners, LLC) ("Plaintiff" or "CreditNinja"), for its claims against the United States Small Business Administration ("SBA") and the other United States Defendants, asserts and alleges as follows:

1.      Plaintiff brings this complaint under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, to enjoin and set aside the final action of the SBA denying Plaintiff's application for loan forgiveness under the Paycheck Protection Program ("PPP"), instituted under the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) ("CARES Act," or the "Act").

2.      Plaintiff is in the business of issuing online personal loans to consumers, often providing same-day decisions, performing a valuable service to borrowers in need of such quick and efficient financing. On April 4, 2020, as Plaintiff was experiencing severe economic

129478652.1

hardship due to the COVID pandemic, Plaintiff applied for a PPP loan. Plaintiff met all requirements under the CARES Act to receive a forgivable PPP loan and, several weeks later, signed a promissory note and received approximately $1.05 million in PPP loan proceeds.

3.      Two years later, on April 18, 2022, the SBA issued a Final Loan Review Decision erroneously denying Plaintiff's application for PPP loan forgiveness.

4.      With no legal support or citation, the SBA declared in its denial that Plaintiff was ineligible for a loan because it was a "financial business primarily engaged in the business of lending"—one of the categories of businesses excluded from receiving traditional SBA loans based on rules the SBA promulgated in 1996 (the "1996 Rules").[1]

5.      The 1996 Rules, however, are not mentioned in the CARES Act. Moreover, as set forth herein, the traditional SBA business-type limitations, as stated in the 1996 Rules, were, from all available evidence, purposefully *not included* in the PPP loan program, which has different objectives from those of the traditional SBA small business loan program, known as the "7A" loan program.[2]

6.      Rather than providing financial assistance to support small business growth—the stated purpose of the 7A program—the PPP loan program was created as a short-term measure necessitated by the COVID pandemic in order to "keep[] American workers paid and employed."[3] As such, Congress intended to *increase eligibility* for PPP loans, not decrease it. That is, in order to mitigate the devastating effects of the COVID pandemic on small businesses, and their ability to continue paying employees, Congress provided in the PPP provisions of the

---

[1] *See* 13 C.F.R. § 120.110.

[2] Small Business Act of 1958 § 7(a), Pub. L. 85-536, 67 Stat. 230 (1958), as amended, codified at 15 U.S.C. § 636(a).

[3] The CARES Act provisions that established the PPP loan program are titled "Keeping American Workers Paid and Employed." *See* 134 Stat. at 286.

CARES Act, Section 1102, for "*increased eligibility*" to "*any business concern*" that met specific new criteria different from the traditional SBA 7A eligibility requirements ("*in addition to small business concerns*").[4]

7.       On August 8, 2023, the SBA Office of Hearing and Appeals ("OHA") erroneously affirmed the Final Loan Review Decision.  *See* Ex. 1 at 17.  This time, the SBA did cite some authority to support its decision, but that authority is invalid.  In particular, the OHA relied on an SBA Interim Final Rule (the "Exclusion Rule")[5] that it implemented on April 15, 2020, without prior opportunity to comment, that purported to retroactively graft the 1996 Rules onto the existing PPP loan qualification process.

8.       As set forth herein, and as recognized by numerous courts in this circuit and others, the Exclusion Rule is erroneous and contrary to law, Congressional intent, and Congress's mandate to the SBA under the CARES Act.

9.       Simply put, the SBA exceeded its authority when issuing the Exclusion Rule. Nothing in the language of the CARES Act, or any other governing statute or regulation, provides any right, ability, or discretion for the SBA to tack on twenty-five-year-old limitations to a brand new, expansive loan program, enacted in response to a public health and economic crisis—particularly a loan program that Congress specifically designed to provide "*increased eligibility*" to "*any business concern*" that met size limits.  The plain language of the CARES

---

[4]  The relevant portion of the CARES Act, 15 U.S.C. § 636(a)(36)(D), reads as follows:

> (D) INCREASED ELIGIBILITY FOR CERTAIN SMALL BUSINESSES AND ORGANIZATIONS-
> > (i) In general - During the covered period, in addition to small business concerns, any business concern…shall be eligible to receive a covered loan if the business concern …employs not more than…500 employees….

[5]  *See* Interim Final Rule, Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811, 20,812 (Apr. 15, 2020).

Act, and the Congressional record giving rise to the Act, lead to the opposite conclusion: the SBA had no such authority or discretion.

10.     The invalidity of the Exclusion Rule is made even clearer given Congress's actions in December 2020 to establish a "Second Draw" PPP loan program. As the Seventh Circuit Court of Appeals recognized in an analogous action involving another business traditionally excluded by the 1996 Rules, *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, 14 F.4th 624, 629 (7th Cir. 2021), the 2021 Appropriations Act specifically incorporated the 1996 Rules into Second Draw legislation, yet left the existing First Draw legislation intact, with no such incorporation.[6] Per the classic canon of statutory construction, *expressio unius est exclusio alterius* ("the expression of one thing implies the exclusion of the others"), Congress's explicit adoption of the 1996 Rules in the Second Draw, but not in the First Draw, leads to only one reasonable conclusion: Congress did not intend for First Draw applicants to be subject to the 1996 Rules.

11.     Accordingly, the SBA's final decision, based on (i) the invalid Exclusion Rule; and (ii) the improper application of the 1996 Rules, was erroneous and contrary to law. The decision violated the plain and unambiguous language of the CARES Act, as well as Congress's intent in enacting the statute, in violation of the APA, 5 U.S.C. § 706(2)(A) and (C).

12.     In addition, the SBA's denial of Plaintiff's PPP loan forgiveness application represents arbitrary and capricious government action that violated Plaintiff's Constitutional rights. While denying Plaintiff's forgiveness application, the agency irrationally and inconsistently (i) forgave more than a thousand PPP loans issued to other lenders of the *identical* business type; and (ii) waived the Exclusion Rule for other businesses categorically excluded by

---

[6] *See* Consolidated Appropriations Act, 2021, Pub. L. 116-260, 134 Stat. 1182 (Dec. 27, 2020) ("2021 Appropriations Act").

the 1996 Rules (*e.g.*, in the adult entertainment and gambling industries). Such inconsistent actions, directed towards similarly-situated entities, represent unreasonable, arbitrary, and capricious government action, and an abuse of the agency's discretion, in violation of the Due Process and Equal Protection Clauses of the United States Constitution, and the APA, 5 U.S.C. § 706(2)(A), (B), and (C).

13. In sum, Plaintiff herein asks this Court for a declaratory judgment: (i) holding unlawful and setting aside the SBA's final agency action; (ii) directing the SBA to approve Plaintiff's PPP loan forgiveness application in full and forthwith; and (iii) to the extent necessary to carry out and enforce the terms of the judgment, hold unlawful and set aside the Exclusion Rule, and/or declare the 1996 Rules not applicable to the Plaintiff's PPP loan application.

## **PARTIES**

14. Plaintiff CreditNinja Lending, LLC (d/b/a CreditNinja), formerly known as KMD Partners, LLC, is a Delaware Corporation in the business of providing prompt and efficient on-line personal loans to borrowers, with its principal place of business at 222 South Riverside Plaza, Suite 2200, Chicago, Illinois 60606.

15. Defendant SBA is an independent federal agency created and authorized pursuant to 15 U.S.C. § 631 *et seq*. Under the CARES Act, the SBA administers the PPP loan program.

16. Defendant Isabella Casillas Guzman is the Administrator of the SBA, and is sued only in her official capacity. Because Administrator Guzman is the officer with final authority for administering the PPP within the SBA, she is a proper defendant for these claims under the APA.

17. Defendant Janet Yellen is the Secretary of the United States Department of Treasury, and is sued only in her official capacity. Because the Treasury Department oversees the SBA and the PPP programs, Secretary Yellen is a proper defendant in this action.

18.     Defendant United States of America is a proper defendant in APA cases.  *See* 5 U.S.C. § 702.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

20.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district, and the Plaintiff resides in this district.

21.     The April 18, 2022, SBA Final Loan Review Decision is a final agency action pursuant to 5 U.S.C. § 704, and is ripe for judicial review after plaintiff exhausted the administrative appeal requirements in 13 C.F.R. § 134.1201(d), which occurred on August 8, 2023, and that decision's finality on September 7, 2023.

## FACTUAL BACKGROUND

**I.      Statutory and Regulatory Background of the PPP Loan Program:  Extending SBA Loan Eligibility Beyond Traditional SBA Business-Type Limitations**

22.     In 1953, President Eisenhower signed into law the Small Business Act, creating the SBA.  The agency's mission is to "aid, counsel, assist, and protect insofar as is possible, the interests of small business concerns."[7]  One of the primary functions of the SBA is to manage small business loan programs such as the 7A loan program.

23.     In 1996, the SBA implemented the 1996 Rules, which declared certain types of businesses ineligible to participate in the SBA 7A lending programs.  *See* 13 C.F.R. § 120.110 (listing categories of ineligible businesses).

---

[7] *About SBA: Organization*, U.S. SMALL BUS. ADMIN., https://www.sba.gov/about-sba/organization#:~:text=SBA's%20mission%20is%20to%20%22aid,and%20sales%20of%20surplus%20 property (last visited Sept. 12, 2023).

24.     With the 1996 Rules, SBA set forth broad categories of businesses that it deemed ineligible for SBA 7A loans, including non-profit organizations, businesses engaged in gambling and activities of a "prurient sexual nature," certain lobbying, real estate, and insurance businesses, and as relevant here, "[f]inancial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors . . . ."  13 C.F.R. § 120.110(b).

25.     The historical backdrop in which the SBA enacted the 1996 Rules is far different from those that existed in 2020, twenty-five years later.  In early 2020, the COVID-19 pandemic was uncontained and spreading like wildfire, leaving unprecedented public health and economic devastation in its wake.  Small businesses were hit particularly hard by the pandemic, suffering more business closures and causing more job losses than mid-size and large employers.[8]

26.     In March 2020, in order to mitigate the economic devastation caused by the pandemic on small businesses, Congress passed the CARES Act.  Congress's expressed purpose in adopting the Act was to ensure continued employment and income for the millions of Americans employed by small businesses. As one court aptly described the circumstances:

> [T]hese are no ordinary times, and the PPP is no ordinary legislation.  The COVID-19 pandemic has decimated the country's economy, and the PPP is an unprecedented effort to undo that financial harm.  More importantly, the PPP is an effort to protect American *workers*—as noted above, it is located within a Title of the CARES Act named the "Keeping American Workers Paid and Employed Act"—and Congress could rationally have concluded that those workers need protection no matter the line of business in which they work.

*DV Diamond Club of Flint, LLC v. United States Small Bus. Admin.*, 459 F. Supp. 3d 943, 961 (E.D. Mich. 2020), *stay denied,* 960 F.3d 743 (6th Cir. 2020) (emphasis in original).

---

[8] *See* M. Chandler, *et al.*, *How the Coronavirus Recession and Recovery Have Affected Businesses and Jobs in the 100 Largest Metropolitan Areas*, ICIC (Nov. 2021) https://home.treasury.gov/system/files/271/Q2.21-ICIC-Recession-Recovery-Tracker-Report-Draft-Formatted-with-Cover-11.3.21.pdf.  ("[S]mall businesses suffered much greater job losses since the beginning of the pandemic than mid-sized and larger businesses.").

27.     Title I of the Act established the Paycheck Protection Program ("PPP") in Section 1102 of the Act.  15 U.S.C. § 636(a)(36).  The PPP created a special, temporary, forgivable loan program with a unique set of requirements that differed from traditional SBA 7A loan criteria and limitations.  15 U.S.C. § 636(a)(36)(D).[9]

28.     The House and Senate bills giving rise to the CARES Act made clear that due to the COVID pandemic and its particularly devastating effect on small businesses, Congress intended to modify, expand, and increase eligibility for the PPP program beyond traditional SBA constraints.

29.     For example, the Bill Summary of the March 27, 2020, House Bill stated:

> (Sec. 1102) This section authorizes the Small Business Administration (SBA) to guarantee paycheck protection loans during the period beginning February 15, 2020 and ending on June 30, 2020.  During this period, *in addition* to a small business, *any business,* nonprofit organization, veterans organization, or tribal business is eligible to receive a paycheck protection loan if it employs fewer than 500 employees or the applicable SBA size standard for the relevant industry. In addition, individuals who operate as sole proprietors or as independent contractors, as well as certain self-employed individuals, are eligible to receive a paycheck protection loan.[10]

---

[9]  The SBA itself has recognized significant differences between the 7A and PPP loan programs. For example, the SBA adopted several new waivers to its standard affiliation rules for PPP loans and created an administrative appeal process only for challenges to PPP loan forgiveness denials that must be exhausted before a borrower can seek judicial review. *See* Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program, UNITED STATES SMALL BUS. ADMIN. (APR. 3, 2020), https://www.sba.gov/sites/sbagov/files/2020-06/Affiliation%20rules%20overview%20%28for%20public%29%20v2-508.pdf; 13 C.F.R. § 134.1201.

[10]  Bill Summary: H.R. 748, 116th Cong. (2019, 2020) (Public Law), CONG. RESEARCH SERV. (Mar. 27, 2020),  https://www.congress.gov/bill/116th-congress/house-bill/748 (emphasis added).

30.     Consistent with Congressional intentions to expand the eligibility criteria for PPP qualifications, the CARES Act sought to make funds widely available to all small businesses across the commercial spectrum that met the criteria of the newly created program.

31.     Congress did this by establishing "*increased eligibility*" for PPP loan guarantees that extended beyond existing SBA eligible businesses ("*small business concerns*")*,* and by stating unambiguously that "*any business concern*" "*shall be eligible*" for a forgivable PPP loan if it met specific size criteria, as follows:

> (D) *Increased eligibility* for certain small businesses and organizations -
>
>> (i) In general. -During the covered period, *in addition to small business concerns, any business concern,* nonprofit organization, housing cooperative, veterans organization, or Tribal business … *shall be eligible* to receive a covered loan if the business concern…employs not more than the greater of-
>> (I) 500 employees; or
>> (II) if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern operates.

CARES Act, Section 1102.

32.     Similarly, in Section 1106, Congress reinforced the expansive nature of the PPP loan program by broadly describing the conditions of forgiveness applicable to loan recipients. "An eligible recipient *shall be eligible* for forgiveness of indebtedness" provided that a certain percentage of the PPP loan funds are used for allowable payroll expenses.  CARES Act § 1106(b), (d) (emphasis added).

33.     Notably missing from these sections, and all other provisions of the CARES Act and the PPP title of the Act, is any language (i) referring to the 1996 Rules, 13 C.F.R. § 120.110; (ii) stating that Congress meant or intended for its new "*increased eligibility*" PPP program to be subject to or limited by prior existing SBA constraints, other than what was stated therein (*i.e.,*

existing SBA size limitations); or (iii) indicating that Congress intended to bestow upon the SBA any authority or discretion to tack on extra limitations or constraints to its new program that were contrary to the Act's stated purpose, that is, to keep American workers employed, without reference to their line of work.

34.     The fact that the Act was silent in these respects, particularly in light of the Second Draw language in December 2020, discussed below, that explicitly addressed all of these issues, means that the absence was intentional.  Congress meant exactly what it said, and not what it did not say.  Accordingly, the SBA is entitled to no *Chevron* deference[11] on this point.

35.     The governmental bodies charged with implementing the PPP loan program initially followed Congress's mandate by recognizing the expanded nature of the program.

36.     In late March 2020, the SBA and the U.S. Treasury issued announcements touting the program as providing payroll assistance to "*all small businesses*" with fewer than 500 employees.  *See, e.g., SBA Financial Assistance from the U.S. SBA for Small Businesses and Non-Profits* (Mar. 31, 2020) ("Businesses…with 500 or fewer employees may apply.").  As Treasury posted on its website:[12]

**All Small Businesses Eligible**

Small businesses with 500 or fewer employees—including nonprofits, veterans organizations, tribal concerns, self-employed individuals, sole proprietorships, and independent contractors— are eligible. Businesses with more than 500 employees are eligible in certain industries.

37.     The SBA's inclusive interpretation of the PPP loan program to include "all small

---

[11]     *See Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984).

[12]     *Small Business Paycheck Protection Program*, U.S. DEPT. OF TREAS., (Mar. 31, 2020), https://home.treasury.gov/system/files/136/PPP%20--%20Overview.pdf.

businesses," as Congress intended, did not last long, however.

38. On April 15, 2020, in contravention of Congress's plainly-stated, broad intent to increase PPP loan eligibility beyond traditional SBA limitations, the SBA issued the Exclusion Rule, which radically narrowed the scope of the PPP program to parameters set forth twenty five years earlier in the 1996 Rules,[13] in a program designed to serve purposes different from keeping American workers employed during a devastating pandemic.

39. Without any stated explanation or rationale for the rule, and without providing advance opportunity for prior public comment[14] to affected businesses or their employees, the SBA declared in the Exclusion Rule that PPP applicants were now subject to, and limited by, the historical 7A business-type exclusions set forth in the 1996 Rules, 13 C.F.R. § 120.110.

40. Such a limiting rule was nowhere to be found in the language of the original CARES Act, and it flouted the intent of Congress.

41. Through its Exclusion Rule, the SBA effectively excluded a broad swath of businesses—and their employees—from obtaining much-needed economic relief during the peak of the COVID crisis. As relevant to Plaintiff, the SBA now excluded lenders that were (and are) vital to local, regional, state, and national economic development as the United States was (and still is) struggling to dig out from the COVID recession.

42. Compounding the problem, the SBA's regulations allowed numerous businesses, such as Plaintiff's, to expend significant resources applying for PPP loans in reliance on the promise of loan forgiveness. But after these businesses incurred the costs to apply for the loans,

---

[13] *See* Interim Final Rule, Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811, 20,812 (Apr. 15, 2020) (the "Exclusion Rule").

[14] The SBA did allow for post-enaction comment after April 15, 2020, but by then the regulatory die was cast.

and after they shouldered the risk of keeping workers on their payrolls, based on the anticipated receipt of loans that they had every reason to believe would be forgiven, the SBA then changed course in mid-stream, pulled the regulatory rug out from under these small businesses, and retroactively declared them ineligible. In Plaintiff's case, as discussed below, the SBA changed course on this critical issue well after Plaintiff had filed its PPP loan application.

43.    The Exclusion Rule is erroneous and contrary to law, and this Court should declare it invalid.  It lacks any basis in the plain language of the CARES Act, and is contrary to the plain text, purpose, intent, and context of the Act.

44.    The validity of the Exclusion Rule is cast into further doubt as a result of Congress's actions in late December 2020 when it established a Second Draw PPP loan program that differs in critical respects from the original, broad-ranging CARES Act legislation and the First Draw requirements.

45.    In passing the Consolidated Appropriations Act, 2021, Pub. L. 116-260, 134 Stat. 1182 (Dec. 27, 2020) ("2021 Appropriations Act"), Congress added a new definition of an "eligible entity" for a Second Draw PPP loan.  *See id.,* § 311, 134 Stat. at 2002.  This time around, in a different historical context, after the initial weeks of the COVID pandemic, Congress explicitly stated that businesses excluded under the 1996 Rules categories were now precluded from seeking a Second Draw loan.  In marked contrast, the same 2021 Appropriations Act left unchanged the broad eligibility requirements for First Draw applicants set forth in Section 1102 of the CARES Act.

46.    The inclusion of additional explicit constraints in the Second Draw legislation reinforced the conclusion that Congress deliberately omitted such limitations from the First Draw, when the COVID pandemic was raging uncontrollably.  *Expressio unius est exclusio*

*alterius* ("The expression of one thing is the exclusion of the other.").[15] Further, as the Seventh Circuit has concluded in reviewing this exact point in the context of the 2021 Appropriations Act, "[t]he second round of the Paycheck Protection Program was drafted with more time" to spend on careful wording for both the new Second Draw and renewed First Draw programs. *Camelot Banquet Rooms, Inc. v. United States Small Bus. Admin.*, 24 F.4th 640, 645 (7th Cir. 2022).

47.     The Second Draw incorporation of the 1996 Rules also reinforces the fact that when Congress wanted to exclude broad categories of businesses from its expansive new loan program, and/or wanted to draw on or adopt existing regulatory parameters for the program, it knew very well how to accomplish such intentions in a clear and unambiguous manner.  As one court explained:

> The adoption of that language in the subsequent enactment proves that Congress was, and is, well aware of the regulatory background against which the original PPP was created, and that when it desires to do so it knows exactly how to adopt and endorse previously issued regulatory qualifications.  The fact that it did not do so when it authorized the first PPP program reinforces the conclusion that the choice to promulgate its own separate, simplified, all-inclusive—and, at least as to entity type and size, entirely exclusive—eligibility criteria was both reasoned and deliberate.

*Nat'l Ass'n of Home Builders v. United States Small Bus. Admin.,* No. 20-11780, 2021 U.S. Dist. LEXIS 186548, at *32 (E.D. Mich. Sept. 28, 2021), *vacated as moot on other grounds*, No. 21-1765, 2023 U.S. App. LEXIS 908 (6th Cir. Jan. 13, 2023).

---

[15]  *See Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit,* 507 U.S. 163, 168 (1993) (applying canon to FED. R. CIV. P. 9(b)) ("Rule 9(b) does impose a particularity requirement in two specific instances. … Thus, the Federal Rules do address in Rule 9(b) the question of the need for greater particularity in pleading certain actions, but do not include among the enumerated actions any reference to complaints alleging municipal liability under § 1983.  *Expressio unius est exclusio alterius.*"); *accord*, *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) ("courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

48. Congress did neither in establishing eligibility for PPP loans like the one awarded to Plaintiff, and the SBA's opposite interpretations and decisions are contrary to law.

## II. Procedural History of Plaintiff's Application for a PPP Loan and Forgiveness

49. On April 4, 2020, eleven days before the SBA issued the Exclusion Rule on April 15, 2020, Plaintiff applied for a PPP loan through the Bank of America (SBA Loan No. 3293027301).[16]

50. Plaintiff was in dire economic straits at the time. Notwithstanding payroll reductions for management, implementation of cost saving measures, and institution of a hiring freeze, Plaintiff had real and serious doubts about whether it could continue to operate as a going concern. The PPP funds were much needed to keep the company afloat and its workers employed.

51. When deciding to expend significant time and resources to apply for a PPP loan, Plaintiff relied on the plain language of the CARES Act that clearly and unambiguously stated that "*any business concern*" was eligible for PPP loans and loan forgiveness if it met SBA size limitations, which Plaintiff did.

52. Moreover, when Plaintiff applied for a PPP loan, the SBA had no rules or regulations in effect stating that the agency was intending to apply a much-narrowed interpretation of the CARES Act when determining eligibility. As noted, the Exclusion Rule was not published in the Federal Register and effective until April 15, 2020, eleven days after Plaintiff applied.

---

[16] The August 8 Decision incorrectly states that Plaintiff's PPP loan application was dated April 10, 2020. Ex. 1 at 9. The loan application is attached as Exhibit 2 to Plaintiff's Petition for Appeal (submitted to the SBA OHA on May 8, 2022), and plainly shows that the loan application was dated April 4, 2020.

53.     The SBA's existing guidance provided that such time gaps, in between application and regulation, should work to the benefit of applicants, not against them.

54.     For example, in recognition of the fluid, rapidly-shifting status of COVID laws and regulations, and the unfairness of retroactive application, the SBA explicitly stated in guidance that applicants could rely on regulations and guidelines existing *at the time that they applied*:

> 17. Question: I filed or approved a loan application based on the version of the PPP Interim Final Rule published on April 2, 2020. Do I need to take any action based on the updated guidance in these FAQs?
>
> Answer: No. Borrowers and lenders **may rely on the laws, rules, and guidance available at the time of the relevant application.** However, borrowers whose previously submitted loan applications have not yet been processed may revise their applications based on clarifications reflected in these FAQs.[17]

55.     The SBA did not follow its own guidance.  Had it done so, it would have reviewed Plaintiff's PPP loan and forgiveness applications in the context of the date it filed its application, April 4, 2020.

56.     Prior to April 15, 2020, no SBA rule or regulation in effect stated that the SBA was going to retroactively tack on the 1996 Rules to existing PPP loan requirements.

57.     On April 29, 2020, the SBA approved Plaintiff's loan in the amount of $1,047,980.85.  On April 30, 2020, Plaintiff signed a promissory note, again, based on its understanding that it was qualified for loan forgiveness.  Plaintiff would not have applied for PPP loans, or incurred a six-figure debt to the government with the promissory note, had it known it was not eligible for loan forgiveness.

58.     On May 7, 2020, the SBA/Bank of America wired the loan funds to Plaintiff's

---

[17]  *See* Paycheck Protection Program Loans Frequently Asked Questions, UNITED STATES SMALL BUS. ADMIN. (April 7, 2020), https://www.sba.gov/sites/sbagov/files/2023-03/Final%20PPP%20FAQs%204-7-20.pdf. (emphasis added).

bank account.  Plaintiff used the funds to pay for payroll and other PPP-permitted expenses.

59.     On September 17, 2021, Plaintiff submitted its loan forgiveness application to the SBA via the Bank of America portal.

60.     On April 18, 2022, the SBA issued a two-page Paycheck Protection Program Final SBA Loan Review Decision denying Plaintiff's forgiveness application.  The SBA's stated rationale for the denial was as follows:

> SBA has determined that the borrower was ineligible for the PPP loan.  The reasons(s) for the SBA's decision is as follows:  After review of the documentation provided, the SBA concludes that Borrower is a financial business primarily engaged in the lending, investments, or an intelligible business engaged in financing or factoring.

61.     The Final Loan Review Decision provided no further information or analysis from which Plaintiff could determine the legal basis for the SBA's denial.  Most notably, the SBA did not provide any source, citation, or reference to support its legal conclusion that Plaintiff's status as a lender was somehow preclusive under the CARES Act.

62.     The SBA also did not address or attempt to explain in the Final Loan Review Decision why it believed that Plaintiff did not qualify under the plain language of Section 1102 of the CARES Act that provided "*increased eligibility*" for "*any business concern*" that met SBA size limits.  In fact, the Supreme Court has repeatedly emphasized the need for an "expansive" reading of the word "any" when used in statutory language.[18]  Further, the Sixth Circuit Court of Appeals has specifically concluded, with respect to the Exclusion Rule, that "if Congress had intended to permit the SBA to apply its existing eligibility limitations, Congress could easily

---

[18]  *SAS Inst., Inc. v. Iancu*, 138 S.Ct. 1348, 1354 (2018) (*quoting United States v. Gonzales*, 520 U.S. 1, 5 (1997)).  The Court in *Iancu* went on to say, "[w]hen used (as here) with a 'singular noun in affirmative contexts,' the word 'any' ordinarily refer[s] to a member of a particular group or class without distinction or limitation' and in this way 'impl[ies] *every* member of the class or group.'" *Id*. (*quoting* Oxford English Dictionary (3d ed. Mar. 2016)) (emphasis in original).

have provided that 'any *otherwise* eligible business concern' employing the requisite number of Americans during the covered period would be eligible for a PPP loan."[19]

63.     On May 18, 2022, Plaintiff timely filed its Petition for Appeal of the Final Loan Decision before the SBA's Office of Hearings and Appeals.

64.     On August 8, 2023, the OHA Administrative Law Judge issued its Decision denying Plaintiff's appeal and affirming the Final Loan Review Decision. *See* Ex. 1 at 17.

65.     The Aug. 8 Decision, though providing legal citations and more detailed explanations for its denial, is erroneous and reversible in several respects. First, it ignored the plain language of the CARES Act and Congressional intent, which opened up PPP eligibility to *any business concern* that met SBA size limits. Second, it relied on the erroneous Exclusion Rule, and the inapplicable 1996 Rules. Third, it contained erroneous legal analyses and findings.

66.     For example, the Aug. 8 Decision incorrectly rejected (under an inapplicable "estoppel" theory) Plaintiff's assertion that the SBA acted in an arbitrary and capricious manner (*see* Section III below) when it denied Plaintiff's application while forgiving 60 percent of loans made to other lenders in the same business-type.[20]

67.     The Aug. 8 Decision also incorrectly found that the SBA was *not* retroactively applying the Exclusion Rule, and thus *not* causing "retroactive harm" to Plaintiff. *See* Ex. 1 at 13-14. There can be no reasonable doubt that the SBA retroactively applied the April 15, 2020, Exclusion Rule to Plaintiff's April 4, 2020, loan application, and that Plaintiff was harmed thereby. That conclusion is unavoidable notwithstanding the SBA's incorrect *ipse dixit* finding

---

[19] *DV Diamond Club of Flint, LLC v. United States Small Bus. Admin.*, 459 F. Supp. 3d 943, 958 (E.D. Mich. 2020), *stay denied*, 960 F.3d 743 (6th Cir. 2020) (emphasis in original).

[20] *See* Ex. 1 at 16, n.33; Decl. of Tricia Kozlowski, Ex. 2 to Plaintiff's Petition for Appeal to the SBA OHA (accurate as of the date of that Declaration, May 17, 2022).

that such retroactive application was somehow valid.

68.     The Aug. 8 Decision also incorrectly found that the SBA was not applying a new policy when enacting the Exclusion Rule.  *See* Ex. 1 at 14.  To the contrary, the SBA specifically recognized that it was making new policies with respect to the PPP, and such new policies included the Exclusion Rule, which were not in effect before April 15, 2020.  *See, e.g.*, UNITED STATES SMALL BUS. ADMIN., *Financial Assistance From the US SBA for Small Businesses and Non-Profits* (Mar. 31, 2020) ("Common Questions – Details on PPP: We can't answer them today but will be able to soon.  **Policy is being created as we speak."**) (emphasis added).

69.     The Aug. 8 Decision also improperly gave unwarranted emphasis to the term, "*in general*" in Section 1102 of the CARES Act.  *See* Decision at 11.  "*In general*" is used 249 times in the Act—hardly grounds on which the Court may reasonably support any legitimate analysis of Congressional intent.  In contrast, "*increased eligibility*" is used only *one time* in the Act, and only in Section 1102.  Similarly, "*any business concern*" is used only four times in the Act, and all of that language appears in the context of *expanding,* not contracting, PPP eligibility.  Such targeted, specific language in Section 1102 is much more indicative of Congressional intent than the widespread generic usage of "*in general*" that appears 249 times throughout the 334-page Act.

## III.   The SBA's Denial of Plaintiff's Loan Forgiveness Application Represents Illegal Arbitrary and Capricious Government Actions.

70.     The SBA's own wildly inconsistent actions and decision-making with respect to Plaintiff's PPP application, versus others similarly situated, belie any finding that the agency has acted in a fair, reasonable, clear and/or consistent, and thus enforceable, manner, within its regulatory parameters.  To the contrary, the SBA's irrational and inconsistent decision-making represents arbitrary and capricious government action precluded by the APA and the Due

Process and Equal Protection Clauses of the Constitution.

71.     While denying Plaintiff's loan forgiveness application based on its lending

business type, the SBA has granted and forgiven *60 percent* of all PPP loan applications filed by

other lenders in *the same business type,* sharing the same North American Industry Classification

System ("NAICS") code as Plaintiff ("Consumer Lending"—NAICS code 522291).  This

disparate treatment, and conflicting pattern of regulatory enforcement, evidences improper

arbitrary and capricious government action, in violation of Plaintiff's rights to due process and

equal protection under the Constitution and the APA.  5 U.S.C. § 706(2)(A)(B) and (C).

72.     In addition, while denying Plaintiff's PPP application because it is listed as an

excluded business in the 1996 Rules, 13 C.F.R. § 120.110(b), SBA has opted to waive or not

enforce the same types of categorical exclusions for other listed business categories, such as

adult entertainment establishments, coming under the "prurient sexual nature" exclusion, 13

C.F.R. § 120.110(p), and legal gambling establishments, that come under 13 C.F.R. §

120.110(g).

73.     Below is an exhibit filed in *DV Diamond Club of Flint, LLC,*[21] a lawsuit brought

by certain adult entertainment businesses against the SBA.  The exhibit is an email sent by

government counsel to plaintiffs' counsel, indicating that the SBA would now allow adult

entertainment establishments' loans to be processed in the ordinary course, "without regard to

their ineligibility under 13 C.F.R. § 120.110(p)":[22]

---

[21] ECF No. 59-1, *DV Diamond Club of Flint, LLC v. United States Small Bus. Admin.*, No. 4:20-cv-10899 (filed July 16, 2021). The related reported decisions are 459 F. Supp. 3d 943, 958 (E.D. Mich. 2020), *stay denied*, 960 F.3d 743 (6th Cir. 2020), *dismissed without prejudice, DV Diamond Club of Flint, LLC v. United States Small Bus. Admin.*, 2023 U.S. Dist. LEXIS 152409, at *1 (E.D. Mich. Aug. 29, 2023).

[22] *See* J. Gody, *SBA sidesteps ban to forgive strip clubs' pandemic relief loans*, REUTERS (July 19, 2021), https://www.reuters.com/legal/transactional/sba-sidesteps-ban-forgive-strip-clubs-pandemic-relief-loans-2021-07-19/ ("The U.S. Small Business Administration has said it will disregard a regulatory ban on assistance to adult businesses and take applications for pandemic relief loan forgiveness from strip clubs.").

**Zachary Youngsma**

| | |
|---|---|
| **From:** | Gilligan, Jim (CIV) <​█████████████​> |
| **Sent:** | Tuesday, June 1, 2021 6:46 PM |
| **To:** | Brad Shafer; Matt Hoffer; Zachary Youngsma |
| **Subject:** | Diamond Club:  Loan Forgiveness |

Brad, Matt, Zach,

As you may have heard from counsel for the Camelot I plaintiffs, SBA has decided that it will process the loan-forgiveness requests of plaintiffs in *Diamond Club* and other similar cases that obtained first-draw PPP loans under preliminary injunctions issued by the courts without regard to their ineligibility under 13 C.F.R. § 120.110(p).  Their requests will otherwise be processed under the same terms, conditions, and processes as other loan-forgiveness applicants, which may result in approval or denial, in whole or in part, of their requests.

To facilitate implementation of this decision, my client has asked if you could provide a list including the names, EINs, and first-draw PPP loan number of each *Diamond Club* plaintiff.

Thanks.

JG

74.     Finally, by way of an Interim Final Rule issued on April 28, 2020, the SBA declared that legal gambling businesses were now eligible to receive PPP loans, despite being excluded by the 1996 Rules, 13 C.F.R. § 120.110(g).  *See* Interim Final Rule, Business Loan Program Temporary Changes, et al., 85 Fed. Reg. 23,450, 23,451 (Apr. 28, 2020) (emphasis added):

> A business that is otherwise eligible for a PPP Loan is not rendered ineligible due to its receipt of legal gaming revenues, and 13 CFR 120.110(g) is inapplicable to PPP loans. … On further consideration, the Administrator, in consultation with the Secretary, *believes this approach is more consistent with the policy aim of making PPP loans available to a broad segment of U.S. businesses.*

75.     As far as Plaintiff is aware, the SBA has never endeavored to explain or justify why it believes that adult entertainment establishments or gambling businesses—and their employees—are somehow more qualified or deserving to receive PPP loan forgiveness than a lending businesses such as Plaintiff's, which provides a valuable service for consumer clients in

need of timely financing.

76.     Nor has the SBA ventured to explain why allowing a consumer lending business such as Plaintiff's to receive a forgivable PPP loan is *not* "consistent with the policy aim of making PPP loans available to a broad segment of U.S. businesses," the SBA's justification for allowing gambling operations to receive forgivable PPP loans. *Id.* at 23,450, 23,451.

77.     Such inconsistent and irrational decision-making by the SBA, both in and out of its rulemaking functions, is not reasonable and cannot be reasonably explained.  It is clearly outside of the zone of reasonableness, and further evidence that the SBA has acted in an unenforceable and reversible arbitrary and capricious manner as to Plaintiff.

## CAUSES OF ACTION

### COUNT ONE

### Agency Action Contrary to Law
### 5 U.S.C. § 706(2)(A), (C)

78.     Plaintiff repeats and incorporates the foregoing paragraphs as if set forth at length.

79.     The APA authorizes judicial review of final federal agency actions.  5 U.S.C. § 702.

80.     The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be…not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  *Id.* § 706(2)(A), (C).

81.     The CARES Act provides that "in addition to small business concerns, any business concern…shall be eligible to receive a covered loan," subject only to the conditions that a business meets the Act's size requirement, makes the required good-faith borrower certification, and has been in operation as of February 15, 2020.

82.     At all relevant times, Plaintiff met the size criteria and all other conditions and criteria for applying for and receiving a PPP loan and forgiveness.

83.     The CARES Act, as originally passed and in effect at the time of Plaintiff's loan, also provides that such an "eligible recipient" "shall" be eligible for forgiveness of indebtedness provided that at least a certain percentage of the PPP loan funds were used for approved payroll expenses.

84.     At all relevant times, Plaintiff used all PPP loan proceeds appropriately, and otherwise is fully entitled and qualified to receive full PPP loan forgiveness.

85.     The CARES Act does not authorize the SBA to impose additional, differentially disqualifying eligibility criteria on the Plaintiff or other applicants for PPP loan forgiveness, by way of the Exclusionary Rule, the 1996 Rules, 13 C.F.R. § 120.110, or otherwise.

86.     The SBA's and the Defendants' actions imposing additional eligibility criteria on the Plaintiff, based on the Exclusion Rule, the 1996 Rules, 13 C.F.R. § 120.110, or otherwise, were erroneous, contrary to law, in excess of their statutory authority and limitations, and short of their statutory right.  Plaintiff demands an Order declaring the same.

87.     The SBA's and the Defendants' actions excluding Plaintiff from PPP loan eligibility, and denying its PPP loan forgiveness applications, were erroneous, contrary to law, in excess of their statutory authority and limitations, and short of their statutory right.  Plaintiff demands an Order declaring the same.

88.     Plaintiff also demands a permanent injunction and Order enjoining, holding unlawful, and setting aside the Defendants' unlawful actions; directing the SBA to immediately approve Plaintiff's PPP loan application, and to forgive and eliminate (and reimburse if already paid) all of Plaintiff's PPP loan repayment obligations, including interest, fees, and penalties.

## COUNT TWO

### Arbitrary and Capricious Agency Action
### 5 U.S.C. § 706(2)(A)

89.    Plaintiff repeats and incorporates the foregoing paragraphs as if set forth at length.

90.    The APA authorizes judicial review of federal agency actions.  5 U.S.C. § 702.

91.    The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, or an abuse of discretion.  5 U.S.C. § 706(2)(A).

92.    Defendants' actions, finding that Plaintiff was ineligible for a PPP loan and forgiveness, and denying Plaintiff's forgiveness application, based on its business type as a lender, while approving 60 percent of other applicants of the same lender business type, was arbitrary and capricious, an abuse of discretion, and not in accordance with law.  Plaintiffs demand an Order declaring the same.

93.    Defendants' actions, finding that Plaintiff was ineligible for a PPP loan and forgiveness, and denying Plaintiff's forgiveness application based on its being an excluded business under the Exclusion Rule and the 1996 Rules, 13 C.F.R. § 120.110, while waiving the Exclusion Rule to allow other excluded business types—adult entertainment establishments and legal gambling operations—to receive full forgiveness, was arbitrary and capricious agency action, an abuse of discretion, and not in accordance with law.  Plaintiffs demand an Order declaring the same.

94.    Plaintiff also demands a permanent injunction and Order enjoining, holding unlawful, and setting aside the Defendants' unlawful and arbitrary and capricious actions; directing the SBA to immediately approve Plaintiff's PPP loan application, and to forgive and eliminate (and reimburse if already paid) all of Plaintiff's PPP loan repayment obligations,

including interest, fees, and penalties.

## COUNT THREE

### Violations of Constitutional Rights
### 5 U.S.C. § 706(2)(B)

95. Plaintiff repeats and incorporates the foregoing paragraphs as if set forth at length.

96. The APA authorized judicial review of federal agency actions. 5 U.S.C. § 702.

97. The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be contrary to constitutional right, power, privilege, or immunity. 5 U.S.C. § 706(2)(B).

98. The SBA's and Defendants' actions, findings, and decisions described herein, acting in an unreasonable, irrational, arbitrary and capricious manner, and treating similarly situated entities differently from it without any reasonable or rational basis, violated Plaintiff's rights to due process and equal protection as guaranteed by the United States Constitution. Plaintiff demands an Order declaring the same.

99. Plaintiff also demands a permanent injunction and Order enjoining, holding unlawful, and setting aside the Defendants' unlawful and arbitrary and capricious actions; directing the SBA to immediately approve Plaintiff's PPP loan application, and to forgive and eliminate (and reimburse if already paid) all of Plaintiff's PPP loan repayment obligations, including interest, fees, and penalties.

## <u>PRAYER FOR RELIEF</u>

Wherefore, Plaintiff respectfully asks the Court to order the following relief:

A. Declare that the Exclusion Rule is not in accordance with law, and that the Defendants acted in excess of its statutory authority when causing it to be enacted;

B. Declare that the Plaintiff at all relevant times was eligible and qualified to apply

for a PPP loan, and eligible and qualified for full PPP loan forgiveness;

C.      Declare that the Defendants, as alleged herein, when finding Plaintiff ineligible

for a PPP loan, and denying Plaintiff's PPP loan forgiveness application, acted in a manner that

was (a) arbitrary, capricious, an abuse of discretion, and not in accordance with law; (b) contrary

to Plaintiff's Constitutional right; and (c) in excess of their statutory authority, limitations, and/or

short of their statutory rights;

D.      Hold unlawful and set aside all of Defendants' unlawful, arbitrary and capricious

actions, findings, and conclusions;

E.      Direct the SBA and the Defendants to immediately approve and grant Plaintiff's

PPP loan forgiveness application, and to forgive and eliminate (or reimburse if already paid) all

PPP loan repayment obligations, including interest, fees, and penalties;

C.      Award costs and reasonable attorney fees to the extent permitted by law; and

D.      Grant such other relief as this Court may deem just and proper.


Date: September 15, 2023

<div style="margin-left: 3em;">

   /s/ Thomas M. Wolf        

Thomas M. Wolf (ARDC No. 6314294)

LEWIS BRISBOIS BISGAARD & SMITH LLP
550 W. Adams Street, Suite 300
Chicago, IL 60661
Thomas.wolf@lewisbrishbois.com
312.463.3465 | 312.345.1667 (fax)

Jane C. Luxton (DC Bar No. 243964)
(*pro hac vice* admission in process)
Paul W. Kisslinger (DC Bar No. 465768)
(*pro hac vice* admission in process)

LEWIS BRISBOIS BISGAARD & SMITH LLP
2112 Pennsylvania Avenue NW, Suite 500
Washington, DC 20037
202.558.0655 | 202.558.0654 (fax)
Jane.Luxton@lewisbrisbois.com
Paul.Kisslinger@lewisbrisbois.com

</div>